Docket No. 105320.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MARTEZ HARRIS, Appellant.

*Opinion filed December 18, 2008.*

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

The issue is whether the circuit court of Peoria County erred in allowing the State to impeach defendant, Martez Harris, with certified copies of his prior juvenile adjudications. We hold that it did not.

## BACKGROUND

In August 2004, three men robbed a Peoria bar at gunpoint. Two witnesses identified defendant as one of the culprits, and he was charged with three counts of armed robbery (720 ILCS 5/18–2(a)(2) (West 2004)). Defendant was 19 years old at the time of the offense, and 20 years when the case was called for trial. The case proceeded

to jury trial three times, with the first two ending in mistrial because the jury could not reach a unanimous verdict.

At the third trial, defendant took the stand. During direct examination, defense counsel asked defendant whether he had committed the crime in question. Defendant gave the following response:

> "No sir. There is no possible way that I could have committed this crime. I mean people who commit robberies, things like that, have a motive, have a reason for doing things like that. But I am a professional man. I work. I go to college. I went to Robert Morris, ICC, Midstate. I mean, it's no reason–I mean I live a productive life. I live just like any of the 12 jurors, like you live. I don't commit crimes."

On rebuttal, the State sought to introduce evidence of defendant's five prior felony adjudications to impeach his assertion that "I don't commit crimes." These prior adjudications involved aggravated battery with a firearm, aggravated discharge of a firearm, theft, and unlawful possession of a controlled substance. The State argued that defendant's right to testify does not include the right to lie, and that admission of defendant's numerous felony adjudications was necessary to rebut the false assertion that he does not commit crimes.

After initially denying the request, the trial court ultimately allowed the State to introduce a certified copy of defendant's two most recent juvenile adjudications. These were entered one month before defendant's sixteenth birthday and were for aggravated battery with a firearm and aggravated discharge of a firearm. Defense counsel objected and argued that, under *People v. Montgomery*, 47 Ill. 2d 510 (1971), these adjudications were too prejudicial because, like the current offense, they involve the use of a gun. The trial judge overruled the objection and stated:

> "Well, *Montgomery* requires me to determine that the probative value is not outweighed by the danger of unfair prejudice, and certainly there is some prejudice here. Certainly there is prejudice anytime a prior conviction is brought in as to a witness or a defendant. In this case I understand your point [that these are all gun crimes] *** but the Court also cannot overlook the defendant's testimony that

-2-

'I don't commit crimes' as being factored in here. This came up during direct examination. So when weighing the whole, when given the weight and weighing all the factors that I need to weigh, I am going to allow the most recent [adjudications]."

After admitting the adjudications, the trial court immediately instructed the jury that "evidence of defendant's previous juvenile adjudication may be considered by you only as it may affect his believability as a witness and must not be considered by you as evidence of his guilt of the offense for which he is charged." The jury found defendant guilty on all three counts, and the trial court sentenced him to 24 years in prison.

Defendant appealed, and a divided appellate court affirmed. 375 Ill. App. 3d 398. The principle issue in the appellate court was whether the trial court erred in allowing the State to impeach defendant with certified copies of his prior juvenile adjudications. In the lead opinion, Justice Carter explained that, when an adult defendant takes the stand and presents a false or misleading portrayal of himself to the jury, a juvenile adjudication may become admissible, in the trial judge's discretion, for the limited purpose of impeaching that testimony. 375 Ill. App. 3d at 406. Citing the United States Supreme Court's decision in *Harris v. New York*, 401 U.S. 222, 225, 28 L. Ed. 2d 1, 4, 91 S. Ct. 643, 645-46 (1971), Justice Carter added that such a rule is necessary not simply because the defendant "opened up the door" to the subsequent impeachment, but rather because "the integrity of the entire judicial process depends upon it." 375 Ill. App. 3d at 406. According to Justice Carter, "[t]here is no right to testify falsely" and "a defendant cannot be allowed to use the policy-based prohibition against the admission of a juvenile adjudication as a license to provide false testimony to the jury." 375 Ill. App. 3d at 406.

Justice Carter also rejected the argument that, instead of allowing the State to simply introduce certified copies of the prior adjudications on rebuttal, the trial court should have required the State to cross-examine defendant as to those adjudications, thereby giving defendant the opportunity to rehabilitate himself. According to Justice Carter, "[t]he recourse suggested by defendant *** is far more prejudicial than the course of action chosen by the trial judge

and would have possibly subjected defendant to a broad inquiry regarding his prior juvenile history." 375 Ill. App. 3d at 407.

In a special concurrence, Justice Holdridge agreed with Justice Carter's conclusion that the prior juvenile adjudications were properly admitted for purposes of impeachment. In his view, however, there was no need to invoke or even discuss the United Supreme Court's decision in *Harris*, which involved different facts, because *People v. Bunch*, 159 Ill. App. 3d 494 (1987) (holding that prior juvenile adjudications may be used for impeachment where an adult defendant gives false or misleading testimony about his criminal history) is directly on point. 375 Ill. App. 3d at 411 (Holdridge, J., specially concurring).

In dissent, Justice O'Brien agreed that the State may use the defendant's juvenile records for impeachment if the defendant opens the door by testifying on direct examination to some aspect of his criminal history. In her view, however, defendant's assertion that "I don't commit crimes" was insufficient to open that door. According to Justice O'Brien, defendant "was not making an affirmative reference to his criminal record, nor was he misstating or falsifying his criminal record." Instead, he made an only "generic, present tense" statement. 375 Ill. App. 3d at 412-13 (O'Brien, J., dissenting).

We granted defendant's petition for leave to appeal. 210 Ill. 2d R. 315.

DISCUSSION

The issue before this court is whether the trial court erred in allowing the State to introduce certified copies of defendant's prior juvenile adjudications for purposes of impeachment. We hold that it did not.

It is well established that trial courts possess discretion in determining the admissibility of evidence, and a reviewing court may overturn a trial court's decision only when the record clearly demonstrates the court abused its discretion. *People v. Zwart*, 151 Ill. 2d 37, 44 (1992). Similarly, the latitude to be allowed on cross-examination and rebuttal is a matter within the sound discretion of the trial court, and a reviewing court should not interfere unless

there has been a clear abuse of discretion. *People v. Hobley*, 159 Ill. 2d 272, 309 (1994).

Here, defendant argues that the trial abused its discretion in two ways. First, defendant argues that trial court abused its discretion in allowing the impeachment at all because the statement "I don't commit crimes" was insufficient to open the door to the introduction of defendant's juvenile criminal background. Second, defendant argues that, even if his testimony *did* open the door, the trial court abused its discretion in allowing the State to simply introduce certified copies of defendant's prior adjudications on rebuttal. Instead, the trial court should have directed the State to confront defendant with his juvenile record on cross-examination, thereby giving defendant a chance to rehabilitate himself. We disagree with both of these arguments.

There is no question that a defendant can open the door to the admission of evidence that, under ordinary circumstances, would be inadmissible. See, *e.g.*, *People v. Jefferson*, 184 Ill. 2d 486 (1998). In *Jefferson*, for example, the evidence against the defendant included a signed inculpatory statement. At trial, the defendant testified that she signed the statement only because she had been told by the police that her child had hours to live and that, if she signed the statement, she would be allowed to see her child, talk to her parents, and go home. To rebut this testimony, the State was allowed to introduce evidence that the defendant had been promised nothing and confessed shortly after agreeing to undergo a polygraph examination, which was scheduled for the next day. In affirming the trial court's decision to allow in this evidence, this court began by acknowledging that "the general rule in Illinois is to preclude introduction of evidence regarding polygraph examinations and the results of those tests." *Jefferson*, 184 Ill. 2d at 492. The court added, however, that "[t]he rule of exclusion is not without exception" and that "evidence that is inadmissible may become admissible if the defense opens the door to its introduction." *Jefferson*, 184 Ill. 2d at 493, 496-97. Thus, the court explained, "[h]aving testified that the statement was made in response to improper inducements by the police, the defendant cannot now be heard to complain about the introduction of rebuttal evidence regarding the circumstances that actually led her to make the statement." *Jefferson*, 184 Ill. 2d at 497. Indeed, "[t]o *disallow* this

evidence would only succeed in permitting the defendant to unjustifiably profit from our general rule that bars introduction of evidence relating to polygraphy testing." (Emphasis added.) *Jefferson*, 184 Ill. 2d at 497.

Notably, this court has applied the same policy with respect to prior convictions, though not with the same depth of analysis. For example, in *People v. Nastasio*, 30 Ill. 2d 51 (1963), the defendant on direct examination admitted to some prior convictions and denied the existence of any others. On cross-examination, the State was allowed to introduce evidence of several additional prior convictions that the defendant had neglected to mention. In affirming the trial court's decision to admit that evidence, the court acknowledged that it is generally impermissible to cross-examine a defendant about a prior conviction. Nevertheless, the court explained:

> "The record here discloses that the defendant on direct examination testified to prior convictions of infamous and noninfamous crimes, and also that he never had been convicted of any crime other than those mentioned. The defense cannot therefore claim error or prejudice once the defendant has opened the door on direct examination." *Nastasio*, 30 Ill. 2d at 58.

Similarly, in *People v. Bey*, 42 Ill. 2d 139 (1969), the defendant admitted on direct examination that he had been convicted of a felony in 1956. On cross-examination, the State asked defendant whether the 1956 conviction was his *only* prior felony conviction. Defense counsel objected to the question, but the trial court overruled the objection and directed the defendant to answer. Defendant stated that he had also been convicted of burglary in 1961. On appeal, this court affirmed the trial court's ruling, and in doing so explained:

> "Defendant voluntarily testified to his 1956 conviction. Even though he did not affirmatively state that no other convictions existed, it probably may fairly be said that he hoped the jury might infer that was his only conviction of an infamous crime, for testimony as to one conviction seemingly implies the absence of others. Accordingly, we believe the ruling of the trial court is sustainable on the basis of *Nastasio's* rationale ***." *Bey*, 42 Ill. 2d at 147.

See also *People v. Coleman*, 158 Ill. 2d 319, 337 (1994) (general rule that it is improper to cross-examine a defendant about a prior conviction does not apply where the defendant opens the door to such cross-examination).

In light of these decisions, the pivotal question in this case is this: When defendant testified that "I don't commit crimes," was he attempting to mislead the jury about his criminal background? If he was, then he "opened the door" and the trial court was well within its discretion to allow the admission of defendant's prior adjudications for purposes of impeachment. If he was not, then defendant's testimony was not a proper basis for the admission of that evidence.

This court gives great deference to the trial court's interpretation of a witness's testimony. See *People v. Deleon*, 227 Ill. 2d 322, 332 (2008); see also *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 208 (2005) (Freeman, J., concurring in part and dissenting in part, joined by Kilbride, J.) (this court "must defer to the circuit court's interpretation of testimony unless it is clearly erroneous"). Here, defendant was asked directly whether he committed the specific crime with which he was charged. Instead of simply answering in the negative, defendant insisted that '[t]here is no possible way that I could have committed this crime," in part because "I don't commit crimes." Now defendant submits that this answer was merely "a present tense statement of how he conducts his life" that was never meant to "falsify or misstate his juvenile record." And perhaps this is true. But it is just as reasonable to construe defendant's answer as a comprehensive denial of *ever* having engaged in criminal activity, which amounts to an outright lie. This is clearly how both the trial court and appellate court majority perceived it, and at oral argument before this court, even defense counsel conceded that "it's a close question." Given this reality, we have no basis for disturbing the trial court's conclusion that defendant was attempting to mislead the jury, as it was in a far better position than we are to assess the meaning of defendant's testimony. Accordingly, we conclude that the trial court's decision allowing the State to impeach defendant with evidence of his prior juvenile adjudications was not an abuse of discretion.

Defendant next argues that, even if the trial court was correct in allowing the State to impeach him with his prior adjudications, it

nevertheless erred by allowing the State to simply introduce certified copies of those adjudications on rebuttal. Instead, defendant argues, the trial court should have directed the State to confront defendant with his juvenile record on cross-examination, thereby giving defendant a chance to rehabilitate himself.

This argument is without merit. This court has held that, as a general rule, "it is improper to cross-examine a defendant about a prior conviction even where the conviction has been properly introduced into evidence." *Coleman*, 158 Ill. 2d at 337. And while this rule is not always enforced when a defendant opens the door to such cross-examination (see, *e.g.*, *Bey*, 42 Ill. 2d at 147; *Coleman*, 158 Ill. 2d at 337), admission of a certified copy of the prior conviction remains the preferred form of impeachment even under those circumstances. In *Bey*, for example, the defendant gave an answer on direct examination that created a false impression about his criminal history. To correct that impression, the trial court allowed the State to cross examine him about a prior criminal conviction that had not been discussed on direct examination. On appeal, the defendant argued, *inter alia*, that the trial court erred in allowing the State to cross-examine him about the prior conviction. According to the defendant, the proper approach would have been for the State to simply introduce a certified copy of the prior conviction on rebuttal. In affirming the defendant's conviction, this court explained that, while the trial court's decision to allow cross-examination was not reversible error, "proof of the [prior] conviction by introduction of the record *would have been preferable*." (Emphasis added.) *Bey*, 42 Ill. 2d at 147. In other words, *Bey* teaches that, even where the State seeks to impeach a specific piece of the defendant's testimony, proof of a prior criminal conviction is best accomplished through the introduction of a certified copy of that conviction, not through cross-examination. That is exactly the approach taken by the trial court in this case, and we therefore have no basis for concluding that it abused its discretion.

As a final matter, we note that the State argues for the first time in this court that, even if the trial court erred in concluding that defendant's testimony opened the door to the admission of his prior adjudications, those adjudications were nevertheless admissible for purposes of impeachment under section 5–150(1)(c) of the Juvenile

Court Act of 1987. See 705 ILCS 405/5–150(1)(c) (West 2006). We need not decide this issue, however, as we have already concluded that the trial court did not err in concluding that defendant's testimony opened the door.

## CONCLUSION

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed*.